UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No.    2:12 CR 144 RL-APR |
| | ) | |
| MONTELL VALENTINO WILLIAMS | ) | |

PLEA AGREEMENT

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, come now the United States of America, by Assistant United States Attorney Jill Koster and Department of Justice Trial Attorneys John Richmond and Amanda Gregory, the defendant, Montell Valentino Williams, and Robert J. Varga as attorney for the defendant, and show the Court they have entered into a plea agreement as follows:

1.    I, Montell Valentino Williams, have the ability to read, write and speak the English language.

2.    I have received a copy of the Superseding Indictment in this case and have read and discussed it with my lawyer, and believe and feel that I understand every accusation made against me in this case.

3.    I have told my lawyer the facts and surrounding circumstances as known to me concerning the matters mentioned in the Superseding Indictment and believe and feel that my lawyer is fully informed as to all such matters.  My lawyer has counseled and advised me as to the nature and elements of every accusation against me and as to any possible defenses I might have.

4.    I understand that I am entitled to have all of my rights which may be involved in

this matter explained to me, and that I have the right to have any questions I may have answered

for me.

    5.    I understand by pleading guilty I waive certain rights. The rights described below

have been explained to me, as well as the consequences of my waiver of these rights:

        a.    If I persisted in a plea of not guilty to one or more of the charges against me, I would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. I have the right to a jury trial. However, I may waive a jury trial in writing with the approval of the Court and the consent of the government.

        b.    If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Myself and my attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that a defendant is presumed innocent, and that it could not convict unless, after hearing all the evidence, it was persuaded of my guilt beyond a reasonable doubt, and that it was to consider each count of the Superseding Indictment separately.

        c.    If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of my guilt beyond a reasonable doubt.

        d.    At a trial whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against me. I would be able to confront those government witnesses and my attorney would be able to cross-examine them. In turn, I could present witnesses and other evidence in my own behalf. If the witnesses for me would not appear voluntarily, I could require their attendance through the subpoena power of the Court.

        e.    At a trial, I would have a privilege against self-incrimination so that I could decline to testify, and no inference of guilt could be drawn from my refusal to testify. If I desired to do so, I could testify in my own behalf.

        f.    At trial and at every stage of the proceedings, I have a right to an attorney, and if I could not afford an attorney one would be appointed for me.

        g.    In the event that I should be found guilty of one or more of the charges against

-2-

me, I would have the right to appeal my conviction on such charge to a higher court.

6.    I understand that under the U.S. Sentencing Guidelines, the Court, in light of an investigation by the United States Probation Office, will determine the applicable sentencing guideline range, and that the Court will determine all matters, whether factual or legal, relevant to the application of the U.S. Sentencing Guidelines.  I understand that the U.S. Sentencing Guidelines are advisory only, and that the specific sentence to be imposed upon me will be determined by the judge after consideration of a pre-sentence investigation report, input from counsel for myself and the government, federal sentencing statutes, and the U.S. Sentencing Guidelines.

7.    Notwithstanding the above, I have, with the assistance of counsel, entered into an agreement with the United States Attorney's Office as follows:

a.    I will plead guilty to Count 3 of the Superseding Indictment charging me with transporting an individual in interstate commerce with intent that such individual engage in prostitution in violation of Title 18, United States Code, Section 2421 because I am, in fact, guilty of that offense.  I also agree to forfeit my interest in the computer and computer-related equipment seized by the United States of America in this cause and to hold the United States, its agents, and its employees harmless from any claims whatsoever in connection with its seizure or forfeiture.

b.    I understand that the statutory maximum term of incarceration for my conviction of the offense charged in Count 3 of the Superseding Indictment is ten (10) years imprisonment, followed by a minimum of five (5) years of supervised release and a maximum term of up to lifetime supervised release following my incarceration. I further understand that for my conviction of the offense charged in Count 3, I will face a fine of up to $250,000 and a special assessment of $100 which will be due and payable at the time of my sentencing hearing.

c.    In exchange for my guilty plea to the charge of transporting an individual in interstate commerce with intent that such individual engage in prostitution in Count 3 of the Superseding Indictment, the United States of America agrees to

seek leave of Court at my sentencing hearing to dismiss Counts 1, 2, 4 and 5 of the Superseding Indictment, which charge me with violations of 18 U.S.C. §§ 1591, 1594 and 2421, and the United States of America also agrees not to file any additional charges against me which could be brought based upon my conduct in the Northern District of Indiana and elsewhere which is related to this criminal investigation and is currently known to the government.

d.　The United States of America and I have also entered into the following agreements which are **not** binding upon the Court, and I understand that if the Court does not follow these agreements I will not be allowed to withdraw my guilty plea:

    i.　In recognition of my acceptance of responsibility for my offense conduct, in any U.S. Sentencing Guideline calculation, I am entitled to a two point, and if eligible, an additional one point reduction in offense level for acceptance of responsibility; however, the United States of America is not obligated to recommend I receive the acceptance of responsibility adjustment if I deny my involvement in the offense or relevant conduct, give conflicting statements of my involvement or relevant conduct, or engage in additional criminal conduct.

    ii.　The United States of America and I also agree to recommend that the Court include, in an offense level calculation under U.S. Sentencing Guideline § 2G1.1 and § 2A3.1, the following specific offense characteristics:

        A.　The four (4) level enhancement under § 2G1.1(b)(1) because the offense involved fraud or coercion; and

        B.　The four (4) level enhancement under § 2A3.1(b)(1) because the offense involved conduct described in 18 U.S.C. § 2421(a) or (b);

    iii.　The United States of America and I agree that the cross-reference set forth in § 2G1.1(c)(1) applies due to my offense conduct and therefore that my sentence should be calculated under Guideline § 2A3.1.  Based upon the application of the above-referenced specific offense characteristics, the United States of America and I agree that the Guideline level I will face if I receive full credit for acceptance of responsibility is a Level 31.  In exchange for my timely guilty plea in this case, the United States of America agrees to recommend a sentence at the low end of the applicable Guideline range.  The United States of America and I agree that, based upon the facts of this case, and with full consideration of any factors to be considered under 18 U.S.C. § 3553(a), a sentence within the applicable

-4-

Guideline range is a fair and reasonable sentence in this case and no grounds exist for an upward or downward departure or variance from that sentence of incarceration.

iv.    The United States of America and I further agree to recommend that the Court order, as a mandatory condition of my supervised release, that I register as a sex offender and comply with state sex offender registration requirements pursuant to 18 U.S.C. § 3583(d) and 42 U.S.C. §16913. I have also been advised and understand that under the Sex Offender Registration and Notification Act, a federal law, I must register and keep the registration current in each of the following jurisdictions: the location of my residence; the location of my employment; and, if I am a student, the location of my school. I understand that such registration will require that I provide information that includes my name, residence address, and the names and addresses of any places at which I will be an employee or student. I also understand that I must update my registration not later than three business days after any change of name, residence, employment, or student status. I understand that failure to comply with these obligations may subject me to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment. I further agree that as long as I remain on supervised release, I will provide written documentation, as often as requested by my assigned United States Probation officer, that my sex offender registration remains in good standing.

e.    I understand that the law gives a convicted person the right to appeal the conviction and sentence (including any restitution) imposed; I also understand that no one can predict the precise sentence that will be imposed and that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for my offenses as set forth in this plea agreement; with this understanding and in consideration of the Government's entry into this plea agreement, I expressly waive my right to appeal or to contest my conviction or the sentence imposed, including the manner in which my conviction or sentence was determined or imposed, to any Court on any ground, including any claim of ineffective assistance of counsel unless the claimed ineffective assistance of counsel relates directly to this waiver or its negotiation, including any appeal under Title 18, United States Code, Section 3742 or any post-conviction proceeding, including but not limited to, a proceeding under Title 28, United States Code, Section 2255.

f.    I also agree to waive all rights, whether asserted directly or through a representative, to, after sentencing, request or receive from the United States any further records, reports, or documents pertaining to the investigation or prosecution of this matter; this waiver includes, but is not limited to, rights

conferred by the Freedom of Information Act and the Privacy Act of 1974;

g.  I agree, with respect to the computer and computer-related equipment which I have agreed to forfeit, to waive all interest in any such assets in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.  I also agree to consent to the entry of orders of forfeiture for such property and waive the requirements of Federal Rules of Criminal Procedure 32.2 and 43(a) regarding notice of forfeiture in the charging instrument, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. I agree to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any ground, including that the forfeiture constitutes an excessive fine or punishment.  I agree to take all steps as requested by the United States to pass clear title to forfeitable assets to the United States, and to testify truthfully in any judicial forfeiture proceeding.  I acknowledge that all property covered by this agreement is subject to forfeiture as property which facilitated and was involved in the illegal conduct giving rise to the forfeiture under 18 U.S.C. § 2253.

h.  I  understand that if  I violate any of the provisions of this plea agreement, including my continuing obligation to demonstrate acceptance of responsibility, the United States may at its option either (1) ask the Court to make a determination that I have breached a term in this agreement in which event I will at sentencing lose the benefit of all the non-binding promises made by the government in this agreement and I would have no right to withdraw my guilty plea, or (2) the United States could seek to have the Court declare this entire plea agreement null and void, in which event I can then be prosecuted for all criminal offenses that I may have committed.

8.  I am prepared to state to the Court the facts in this matter that cause me to believe that I am guilty of the charge of transporting an individual in interstate commerce with intent that such individual engage in prostitution as alleged in Count 3 of the Superseding Indictment.

9.  I believe and feel that my lawyer has done all that anyone could do to counsel and assist me, and that I now understand the proceedings in this case against me.

10.  I declare that I offer my plea of guilty freely and voluntarily and of my own accord, and no promises have been made to me other than those contained in this agreement, nor

-6-

have I been threatened in any way by anyone to cause me to plead guilty in accordance with this

agreement.

      11.    I understand and acknowledge that this plea agreement, once filed with the Court,

is a public document which is available for public viewing.


                     /s/ Montell Valentino Williams
                     Montell Valentino Williams
                     Defendant


                     /s/ Robert J. Varga
                     Robert J. Varga
                     Attorney for Defendant


APPROVED:


       DAVID CAPP,                     THOMAS PEREZ,
       United States Attorney         Assistant Attorney General
                                  Civil Rights Division
                                  U.S. Department of Justice


By:   /s/ Jill Koster                By:   /s/ John Richmond
       Jill Koster                     John Richmond
       Assistant U. S. Attorney         Special Litigation Counsel


                                By:   /s/ Amanda Gregory
                                    Amanda Gregory
                                    Trial Attorney

45D10-2502-MI-000059

Filed: 2/3/2025 8:32 PM
Clerk
Lake County, Indiana

USDC IN/ND case 2:12-cr-00144-RL-APR   document 64   filed 07/26/13   page 1 of 7
Lake Superior Court, Civil Division 6

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

**UNITED STATES OF AMERICA**
            **Plaintiff**

**v.**                                                     **Case Number 2:12cr144-001**

                                                          **USM Number 12365-027**

**MONTELL VALENTINO WILLIAMS**
            **Defendant**

                                                          **MATTHEW D LATULIP**
                                                          **Defendant's Attorney**

_____

## JUDGMENT IN A CRIMINAL CASE

**THE DEFENDANT** pleaded guilty to count 3 of the Superseding Indictment on 1/9/2013.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense:

| Title, Section & Nature of Offense | Date Offense Ended | Count Number |
|---|---|---|
| 18:2421 - Mann Act Violation | February 2012 | 3s |

The defendant is sentenced as provided in pages 2 through 7 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

Count 1, 2, 4 and 5 of the Superseding Indictment are dismissed on the motion of the United States as to this defendant only.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

July 19, 2013
_____
Date of Imposition of Judgment

/s/ Rudy Lozano
_____
Signature of Judge

Rudy Lozano, United States District Judge
_____
Name and Title of Judge

July 26, 2013
_____
Date

Defendant: MONTELL VALENTINO WILLIAMS                                          Page 2 of 7
Case Number: 2:12cr144-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **120 months**.

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant participate in an Intensified Drug and Alcohol Treatment Program.

That the defendant be incarcerated in a federal facility as close to **Chicagoland area** as possible.

That the defendant be given credit for time served.

The defendant is remanded to the custody of the United States Marshal.

## RETURN

I have executed this judgment as follows:

Defendant delivered _____ to _____ at _____
_____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By:_____
DEPUTY UNITED STATES MARSHAL

Defendant: MONTELL VALENTINO WILLIAMS
Case Number: 2:12cr144-001

Page 3 of 7

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of **8 years.**

The defendant shall report in person to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance.  The defendant shall refrain from any unlawful use of a controlled substance.

The defendant shall submit to one drug test within 15 days of release from imprisonment and two (2) periodic drug tests thereafter, as determined by the Court.

The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

The defendant shall cooperate in the collection of DNA as directed by the probation officer.

The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, et seq), as directed by the probation officer, the Bureau of Prisons, and any state sex offender registration agency in which he resides, works, or is a student, or was convicted of a qualifying offense.

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

## STANDARD CONDITIONS OF SUPERVISION

1.  The defendant shall not leave the judicial district without the permission of the Court or probation officer.
2.  The defendant shall report to the probation officer in the manner and as frequently as directed by the Court or probation officer.
3.  The defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer.
4.  The defendant shall support his dependents and meet other family responsibilities.
5.  The defendant shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons.
6.  The defendant shall notify the probation officer within ten (10) days of any change in residence or employment.
7.  The defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician.
8.  The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.
9.  The defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer.
10. The defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer.
11. The defendant shall notify the probation officer within seventy-two (72) hours of being arrested or questioned by a law enforcement officer.
12. The defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the Court.
13. As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.
14. The defendant shall pay the special assessment imposed or adhere to a court-ordered installment schedule for the payment of the special assessment.
15. The defendant shall notify the probation officer of any material change in the defendant's economic circumstances that might affect the defendant's ability to pay any unpaid amount of restitution, fines, or special assessments.

## SPECIAL CONDITIONS OF SUPERVISION

The defendant shall participate in a substance abuse treatment program and shall abide by all program requirements and restrictions, which may include testing for the detection of alcohol or drugs of abuse at the direction and discretion of the probation officer.  While under supervision, the defendant shall not consume alcoholic beverages or any mood altering substances, which overrides the "no excessive use of alcohol" language in Standard Condition #7.  The defendant shall not be allowed to work at a tavern or to patronize taverns or any establishments where alcohol is the principal item of sale.  The defendant shall pay all or part of the costs for participation in the program not to exceed the sliding fee scale as established by the Department of Health and Human Services adopted by this court.

The defendant shall participate in a mental health treatment program and shall abide by all program requirements and restrictions.  The defendant shall pay all or part of the costs for participation in the program not to exceed the sliding fee scale as established by the Department of Health and Human Services and adopted by this court.

The defendant shall submit his person, and any property, house, residence, vehicle, papers, computer, other electronic communication or data storage devices or media, and effects, to search at any time, with or without a warrant, by any law enforcement or probation officer with reasonable suspicion concerning a violation of a condition of supervision or unlawful conduct by the defendant.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|---|---|---|
| $100.00 | NONE | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320.  The special assessment payment shall be due immediately.

## FINE

No fine imposed.

## RESTITUTION

No Restitution imposed.

## FORFEITURE

The defendant shall forfeit the defendant's interest in the following property to the United States:

Samsung Micro SD adapter card; HP Laptop Computer with charger; HP Laptop Computer with power cord; Grey Boost Mobile Samsung Flip Cell Phone with Camera; Samsung Boost Cell Phone; Black Samsung Cell Phone with charger; Targus Digital 50-inch Tripod; Nikon Coolpix Digital Camera.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.

Name:    MONTELL VALENTINO WILLIAMS

Docket No.:    2:12cr144-001

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein.  These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed)

_____          _____
Defendant                                                                      Date


_____          _____
U.S. Probation Officer/Designated Witness                      Date

**45D10-2502-MI-000059**

Filed: 2/3/2025 8:32 PM
Clerk
Lake County, Indiana

USDC IN/ND case 2:12-cr-00144-RL-APR document 84-1 filed 07/29/14 page 1 of 1

Case: 13-3094   Document: 00712235783   Filed: 07/29/2014   Pages: 1

**UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT**



Everett McKinley Dirksen United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**ORDER**

Submitted June 25, 2014

Decided July 7, 2014

*Before*

RICHARD A. POSNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

| No.: 13-3094 | UNITED STATES OF AMERICA, Plaintiff - Appellee v. MONTELL V. WILLIAMS, Defendant - Appellant |
|---|---|
| **Originating Case Information:** | |
| District Court No: 2:12-cr-00144-RL-APR-1 Northern District of Indiana, Hammond Division District Judge Rudy Lozano | |

The following is before the court: **JOINT STATEMENT OF POSITION,** filed on June 12, 2014, by counsel for the parties.

Appellant Montel Williams and the government have filed a joint statement of position seeking a remand for reconsideration of two conditions of supervised release in light of *United States v. Siegel*, --- F.3d ---, 2014 WL 2210762 (7th Cir. May 29, 2014). Williams filed an opening brief challenging only two conditions of supervised release that were among the conditions challenged in *Siegel* - the condition prohibiting him from consuming "mood altering substances" and the condition that he pay all or part of the costs of a mental health treatment program in an amount "not to exceed the sliding fee scale as established by the Department of Health and Human Services and adopted by this Court." The government agrees that the special conditions Williams challenges on appeal are identical or substantially similar to the special conditions vacated as inappropriate or inadequately defined by this court in *Siegel*. **IT IS ORDERED** that the case is **REMANDED** for reconsideration of the challenged conditions of supervised release in light of our decision in *Siegel*.

form name: **c7_Order_3J**(form ID: **177**)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | **CASE NUMBER: 2:12CR144-001** |
| | **USM Number: 12365-027** |
| **vs.** | |
| **MONTELL VALENTINO WILLIAMS** | **MICHAEL BOSH** |
| **Defendant.** | **DEFENDANT'S ATTORNEY** |

**JUDGMENT IN A CRIMINAL CASE**

**THE DEFENDANT** pleaded guilty to count 3 of the Superseding Indictment on January 9, 2013.

**ACCORDINGLY,** the court has adjudicated that the defendant is guilty of the following offense(s):

| Title, Section & Nature of Offense | Date Offense Ended | Count Number(s) |
|---|---|---|
| 18:2421 MANN ACT VIOLATION | February  2012 | 3s |

The defendant is sentenced as provided in pages 2 through 11 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.
Counts 1, 2, 4 and 5 of the Superseding Indictment were previously dismissed on the motion of the United States.

**IT IS ORDERED** that the defendant must notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of any material change in economic circumstances.

| |
|---|
| August 30, 2016 |
| Date of Imposition of Judgment |
| s/ Rudy Lozano |
| Signature of Judge |
| Rudy Lozano, United States District Judge |
| Name and Title of Judge |
| August 31, 2016 |
| Date |

Case Number: 2:12CR144-001
Defendant: MONTELL VALENTINO WILLIAMS                          Page 2 of 11

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of **120 months.**

The Court makes the following recommendations to the Bureau of Prisons:

That the defendant be incarcerated in a federal facility as close to Chicago, Illinois as possible.

That the defendant be given credit for time already served.

That the defendant be allowed to participate in the mental health rehabilitation program.

That the defendant be allowed to continue to participate in drug rehabilitation program.


The defendant is remanded to the custody of the United States Marshal.

# RETURN

I have executed this judgment as follows:

Defendant delivered _____ to _____ at _____, with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By: _____
DEPUTY UNITED STATES MARSHAL

## SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be placed on LIFETIME supervised release.

## MANDATORY CONDITIONS OF SUPERVISION

While on supervision, the defendant shall comply with the following mandatory conditions:

1. Defendant shall not commit another federal, state or local crime.

2. Defendant shall not unlawfully possess a controlled substance.

3. Defendant shall cooperate in the collection of DNA sample from you if the collection of such a sample is authorized under section 3 of the DNA Analysis Backlog Elimination Act of 2000.

4. Defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. §16911, et seq.).

5. Defendant shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of release on probation or supervised release and at least 2 periodic drug tests thereafter as determined by the court for use of a controlled substance. This condition may be ameliorated or suspended by the court for any individual defendant if the defendant's presentence report or other reliable sentencing information indicates a low risk of future substance abuse by the defendant.

6. Defendant shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, in consultation with a State Coalition Against Domestic Violence or other appropriate experts, if an approved program is readily available within a 50-mile radius of your legal residence.

## DISCRETIONARY CONDITIONS OF SUPERVISION

While on supervision, the defendant shall comply with the following discretionary conditions:

1. Unless directed otherwise by the probation officer, you must report to the probation office in the federal judicial district where you reside within 72 hours of your release from imprisonment or commencement of probation. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Be responsible for the defendant; instruct the defendant as to the conditions of supervision specified by the sentencing court; keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. It also allows the probation office to begin the supervision process by requiring the defendant*

*to notify the probation office that he or she has been released from the custody of the Bureau of Prisons or that he or she has commenced the specified term of probation.)*

2. After initially reporting to the probation office in the federal judicial district where you reside, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to: Be responsible for the defendant; instruct the defendant as to the conditions of supervision specified by the sentencing court; keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition.)*

3. You must answer truthfully the questions the probation officer asks you related to the conditions of supervision. This condition does not prevent you from invoking your Fifth Amendment privilege against self-incrimination. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. The purpose of this condition is to build positive rapport and facilitate an honest discussion between the probation officer and the defendant. Accurate and complete information about the nature and circumstances of the offense and the history and characteristics of the defendant is necessary to implement effective supervision practices. This condition also promotes the safety of the probation officer by notifying him or her of possible safety threats (e.g., weapons or other occupants in the defendant's home with a history of violence). The probation officer attempts to develop and maintain a positive relationship with the defendant through transparent communication and the implementation of core correctional practices (e.g., active listening, development of problem solving skills, and effective reinforcement). Finally, this condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.)*

4. You must not knowingly leave this federal judicial district without first getting permission from the court or the probation officer. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to: Be responsible for the defendant; instruct the defendant as to the conditions of supervision specified by the sentencing court; keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. It also allows the probation officer to supervise the defendant by setting boundaries for travel without permission and by keeping the probation officer informed of the defendant's whereabouts. Finally, it allows the probation officer*

*to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.)*

5.  You must follow the instructions of the probation officer designed to make sure you comply with the conditions of supervision. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; aid the defendant in bringing about improvements in his or her conduct and condition; instruct the defendant as to the conditions specified by the sentencing court; provide a written statement of those conditions that is sufficiently clear and specific to serve as a guide for such supervision as is required; and provide enforceable instructions that reasonably derive from or are necessary to ensure compliance with the court-imposed conditions of supervision.)*

6.  You must not own, possess, or have under your control a firearm, ammunition, destructive device or dangerous weapon. *(This condition serves the statutory sentencing purpose of public protection. By allowing the probation officer to supervise the defendant without risk to safety caused by the possession of weapons, it enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. Finally, it promotes the public safety and reduces safety risks posed by the defendant to the community and the probation officer, and it assists in ensuring that the defendant is complying with other conditions such as the prohibition of committing new crimes including the prohibition of possession of certain weapons for defendants convicted of certain crimes.)*

7.  You must make the payments and comply with the other terms of any court order or order of an administrative process pursuant to the law of a State requiring you to make child support payments or to make payments to support a person caring for a child. *(This condition is imposed to ensure the defendant complies with court orders and avoids collateral consequences for not complying with court orders such as lost driver's licenses, garnishment of wages, and loan ineligibility.)*

8.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must tell the probation officer at least ten calendar days before the change. If telling the probation officer in advance is not possible due to unanticipated circumstances, you must tell the probation officer within 72 hours after the change. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to keep informed as to the conduct and condition of the defendant and to aid the defendant in bringing about improvements in his or her conduct and condition.*

*Finally, this condition allows the probation officer to implement supervision methods demonstrated by social science to be effective at achieving positive outcomes.)*

9.    You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must tell the probation officer at least ten calendar days before the change. If telling the probation officer in advance is not possible due to unanticipated circumstances, you must tell the probation officer within 72 hours after the change. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. Finally, it allows the probation officer to be aware of changes in the defendant's residence so that the probation officer can determine whether such a change poses a risk to the community or impacts the defendant's risk and needs. Advance notice of such a change is necessary to allow time to assess the suitability of the new residence.)*

10.   You shall refrain from excessive use of alcohol. This includes "binge drinking" and "heavy drinking". "Binge drinking" is defined as a pattern of drinking that brings blood alcohol concentration levels to 0.08 grams per deciliter or higher. "heavy drinking" is defined as "consuming fifteen drinks or more per week," or any use of alcohol that adversely affects your employment, relationships, or ability to comply with the conditions of supervision, or which results in the violation of any local, state, or federal laws including disorderly intoxication or driving under the influence. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also allows the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition.)*

11.   You must not go to, or be at any place where you know or reasonably should know controlled substances are illegally sold, used, distributed, or administered without first obtaining the permission of the probation officer. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also prevents the defendant from being in an environment where crimes are occurring, antisocial associates are present, or there is an increased risk of substance abuse. Finally, it enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition.)*.

12.   If you know someone is committing a crime, or is planning to commit a crime, you must not knowingly communicate or interact with that person in any way. If you know someone has been convicted of a felony, you must not knowingly communicate or

interact with that person in any way without first getting the permission of the probation officer. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. Finally, it prevents antisocial relationships, encourages pro-social relationships, provides the defendant with a justification to avoid associating with persons convicted of felonies, and may deter future criminal conduct that may be jointly undertaken with those persons.)*

13. You must allow the probation officer to visit you at home or at any other reasonable location and you must permit the confiscation of any contraband the probation officer observes in plain view. A visit between the hours of 11:00 p.m. and 7:00 a.m. shall be conducted only when the probation officer has a reasonable belief that you have violated a condition of supervision and that a visit during those hours would reveal information or contraband that would not be revealed by a visit at any other time. If you are placed on home detention with location monitoring equipment and the monitoring service alerts the probation office that either the monitoring equipment has malfunctioned or that you are in noncompliance, you must allow the probation officer to visit you at any time to ensure that the location monitoring equipment is functioning properly and that you are in compliance with your home detention condition. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. Finally, it allows the probation officer to implement effective supervision strategies by making the probation officer aware of the defendant's living environment, and standard of living; by facilitating the development of rapport with the defendant's family members, friends, and other members of the defendant's support network; and by providing an environment that may in some cases be more conducive to open and honest communication with the probation officer.)*

14. You must notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. Finally, it allows the probation officer to be aware of potential criminal activity or involvement in high-risk situations by the defendant and it assists in ensuring that the defendant is complying with other conditions such as the prohibition on committing new crimes or associating with those involved in criminal activity.)*

15. Unless an assessment at the time of release from imprisonment or commencement of probation indicates that participation is not necessary, you must participate in a drug

and alcohol abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay the costs of the program if financially able. You must not use or possess any controlled substances without a valid prescription. If you do have a valid prescription, you must follow the instructions on the prescription. You must not use or possess alcohol during the course of treatment. You must submit to substance abuse testing, not to exceed 85 tests per year, to determine if you have used a prohibited substance. You must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except as with the prior approval of the probation officer. *(This condition serves the statutory sentencing purposes of public protection, deterrence, and rehabilitation. This condition also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. Social science research has shown that substance abuse draws one to antisocial others, exposes one to antisocial attitudes, interferes with prosocial relationships, hampers success at employment, and leads to impulsive decision making. Drug testing deters the defendant from possessing illegal drugs by making him or her cognizant that unlawful possession can be discovered at any time through drug testing, protects the public by enhancing the ability of the probation officer to detect unlawful substances and by assisting with substance abuse treatment, and assists with substance abuse treatment by providing a barometer for change. Abstinence from alcohol use is necessary because research shows that alcohol use is likely to trigger a recovering drug abuser's return to drug use. Additionally, substance-dependent defendants may substitute alcohol for their drug of choice.)*

16.  You must participate in a mental health treatment program and follow the rules and regulations of that program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program (provider, location, modality, duration, intensity, etc.). You must pay the costs of the program if financially able. You must take all mental health medications that are prescribed by your treating physician. You must pay the costs of the medication if financially able. *(This condition serves the statutory sentencing purposes of public protection and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Keep informed as to the conduct and condition of the defendant; report the defendant's conduct and condition to the sentencing court; and aid the defendant in bringing about improvements in his or her conduct and condition. Defendants who suffer from mental disorders may be hampered in their ability to respond to supervision requirements, for example, by cognitive impairments, delusions, and side effects from medications. Defendants who suffer from mental disorders often require more intensive monitoring and specialized treatment. Supervision may stabilize them so that they do not present a danger to themselves or others and reduce the risk that they will commit future crimes.)*

Case Number: 2:12CR144-001
Defendant: MONTELL VALENTINO WILLIAMS                                    Page 9 of 11

17.     You must submit your person, property, house, residence, vehicle, papers, computers (as defined in 18 U.S.C. '1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search, with or without a warrant, conducted by a law enforcement officer or a probation officer. Failure to submit to a search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. A search under this condition may only be conducted when reasonable suspicion exists that you have violated a condition of supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner. Any search beyond "plain-view" requires prior approval by the court. *(This condition serves the statutory sentencing purposes of deterrence, public protection, and rehabilitation. It also enables the probation officer to satisfy the statutory requirements to: Promote public safety through effective oversight of higher-risk defendants; keep informed as to the conduct and condition of the defendant; and aid the defendant in bringing about improvements in his or her conduct and condition. Finally, it may also deter criminal conduct and permit a probation officer to intervene quickly when reasonable suspicion exists that a defendant has engaged in criminal conduct or otherwise violated a condition of supervision.).*

18.     You must not make any agreement with a law enforcement agency to act as a special agent or confidential informant without first getting the permission of the court. *(A confidential informant is a defendant who engages in the prohibited activity of associating with persons engaged in criminal activity for the purpose of furnishing information to or acting as an agent for a law enforcement or intelligence agency. Since the inception of the federal criminal justice system, prosecutors have utilized defendants supervised in the community as confidential informants. The activities required of confidential informants, however, may potentially conflict the conditions normally imposed by a court. Acting as a confidential informant is generally inconsistent with the rehabilitative and re-integrative goals of supervision. Such activities may also pose risks to the probation officer who supervises the defendant, especially when he or she has limited knowledge or no knowledge of the nature of the defendant's activities. There are rare occasions, however, when the law enforcement benefits to the community justify permitting the defendant to engage in this high-risk activity. In these cases, strict monitoring by the court and the probation office is necessary for the safety of the community, the defendant, and the supervising probation officer.)*

The defendant shall pay a special assessment of $100.00, which is due immediately.

Based on a thorough review of the defendant's financial condition as detailed in the presentence report, the Court finds that the defendant does not have the ability to pay a fine. The Court will waive the fine in this case.

Forfeiture: Pursuant to the plea agreement, the defendant agrees, with respect to the computer and computer-related equipment which he has agreed to forfeit, to waive all interest in any such assets in any administrative or judicial forfeiture proceeding, whether criminal or civil, state or federal.

## CRIMINAL MONETARY PENALTIES

The defendant shall pay the following total criminal monetary penalties in accordance with the schedule of payments set forth in this judgment.

| Total Assessment | Total Fine | Total Restitution |
|:---:|:---:|:---:|
| $100 | NONE | NONE |

The defendant shall make the special assessment payment payable to Clerk, U.S. District Court, 5400 Federal Plaza, Suite 2300, Hammond, IN 46320. The special assessment payment shall be due immediately.

## FINE

No fine imposed.

## RESTITUTION

No restitution imposed.

Name: <u>MONTELL VALENTINO WILLIAMS</u>
Docket No.:<u>2:12CR144-001</u>

## ACKNOWLEDGMENT OF SUPERVISION CONDITIONS

Upon a finding of a violation of probation or supervised release, I understand that the Court may (1) revoke supervision, (2) extend the term of supervision, and/or (3) modify the conditions of supervision.

I have reviewed the Judgment and Commitment Order in my case and the supervision conditions therein.  These conditions have been read to me.  I fully understand the conditions and have been provided a copy of them.

(Signed)

_____          _____
Defendant                                            Date


_____          _____
U.S. Probation Officer/Designated Witness            Date

45D10-2502-MI-000059
Filed: 2/3/2025 8:32 PM
Clerk
Lake Superior Court Cause No. 15
Lake County, Indiana

USDC IN/ND case 2:12-cr-00144-RR document 157   filed 08/30/24   page 1 of 16

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 2:12 CR 144 |
| | ) | |
| MONTELL WILLIAMS | ) | |

## OPINION and ORDER

This matter is before the court on defendant Montell Williams's motion to modify the duration and conditions of his term of supervised release. (DE # 142.) For the reasons set forth below, the motion is granted, in part, and denied, in part.

## I.    BACKGROUND

In 2013, defendant pleaded guilty to transporting an individual in interstate commerce with intent to engage in prostitution in violation of the Mann Act, 18 U.S.C. § 2421. (DE ## 20, 43.) The Honorable Judge Rudy Lozano sentenced defendant to the statutory maximum term of 120 months imprisonment, plus eight years supervised release. (DE # 64.) As a condition of supervised release, Judge Lozano required that defendant comply with the requirements of the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16911, *et seq.* (*Id.*)

On appeal, the Seventh Circuit remanded for further explanation regarding two conditions of supervision unrelated to the SORNA issue. (DE # 81.) At resentencing, Judge Lozano sentenced defendant to 120 months imprisonment, plus a lifetime term of supervised release. (DE ## 120, 128.) The condition related to SORNA was again imposed. (*Id.*)

Defendant completed his term of incarceration, and has served approximately three-and-a-half years of his term of supervised release without any violations. (*See* DE # 148 at 1.) He now asks the court to: (1) strike the supervised release condition requiring compliance with SORNA; and (2) reduce his term of supervision from lifetime to five years. (DE # 142.)

## II.     LEGAL STANDARD

A court may modify the conditions of supervised release at any time prior to the expiration of the term, after consideration of relevant Section 3553(a) factors such as the nature and circumstances of the offense, the history and characteristics of the defendant, the need to afford adequate deterrence, and the interests of protecting the public. 18 U.S.C. § 3583(e). A hearing is not required on the present motion because the modifications sought are favorable to the defendant and do not extend the term of supervised release. Fed. R. Crim. P. 32.1(c).

## III.    DISCUSSION

SORNA is a federal statute which was originally enacted to "protect the public from sex offenders and offenders against children." 34 U.S.C. § 20901. It "establishes a comprehensive national system for the registration of those offenders," and requires offenders to register in each jurisdiction (generally, a state such as Indiana) where he or she resides, works, or is a student. *Id.* § 20913. It is a federal crime to fail to register as a sex offender, 18 U.S.C. § 2250, but defendant has not been charged with that crime in this case.

2

When defendant first moved for the court to strike the SORNA condition, he based his request on the premise that SORNA does not apply to him. (DE # 142.) Specifically, defendant pointed out that SORNA contains a consensual sexual conduct exception to its definition of "sex offender." (*Id.*) However, defendant has clarified that he does not seek a determination of whether SORNA's requirements apply to him. (DE # 156 at 3-4.) Rather, defendant simply asks the court to strike the requirement of compliance with SORNA from the list of conditions related to his lifetime term of supervised release. (*Id.*)

The issue of SORNA has been raised in this case on various occasions. Historically, the position of both the Government and the Probation Department was that defendant would not be required to register as a sex offender as a result of his conviction in this case.[1] (*See, e.g.,* DE # 111 at 6; DE # 118 at 3, 15.) Oddly, however, defendant's plea agreement lists compliance with SORNA as a condition of supervised release. (DE # 40 at 5.) The SORNA condition was imposed during defendant's original sentencing (Sent. Tr. at 25), and defendant did not challenge the issue on appeal.

During the resentencing hearing, defense counsel Micheal Bosch argued that there was no legal basis for a SORNA condition, and directed the court's attention to the Probation Department's statement on the matter, which appeared in the Addendum

---

[1]  The Government and Probation Department have since changed course and argue that defendant *is* likely subject to the requirements of SORNA. (*See, e.g.,* DE ## 148, 149.) Regardless, as explained herein, the court need not make this determination today.

3

to the Presentence Report. (Resent. Tr. at 11.) In that Addendum, Probation Officer

David Beier stated:

> Probation does not believe the defendant is required to register under SORNA. This opinion is based on my review of SORNA and discussions with personnel from the Lake County Sex Offender Registry. Prior to the original sentencing in 2013, Probation was of the same opinion.

(DE # 111 at 6.) The Government, represented by Assistant United States Attorney Jill

Koster, responded to Bosch's argument with the following:

> Judge, I think legally, based on my review of the case law and the statutes, that that is true based on his count of conviction. The Defendant did agree to register as a sex offender in his plea, and I think that sex offender registration is clearly appropriate in this case given his criminal conduct; but unfortunately, I don't think the law provides a clear mechanism to hold him accountable under SORNA. So in lieu of him being required to register as a sex offender, the Government is arguing that he should receive a lifetime term of supervised release following his release from incarceration because he is clearly a dangerous individual and poses a significant risk of danger to, in particular, young women.

(Resent. Tr. at 11-12.)

Judge Lozano then stated that he had been in contact with the Indiana

Department of Corrections Sex and Violent Offender Registration Department. (*Id.*) The

Department, Judge Lozano said, indicated that defendant *would be* required register as a

sex offender upon release. (*Id.* at 12.) Counsel for the Government stated that "my legal

research and Probation's legal research netted a different conclusion [than the

Department's]," and urged the court not to impose the condition: "[T]he Government

persists in asking the Court to impose a lifetime term of supervised release. . . .

4

[A]lthough the court has one opinion, it is not crystal clear that he is going to be legally required to register as a sex offender." (*Id.* at 15.)

Judge Lozano did not ultimately conclude that defendant was (or was not) subject to the requirements of SORNA. However, he did impose the SORNA condition tentatively and with the understanding that the matter would be revisited after defendant's release. Specifically, Judge Lozano stated: "The court is going to order that he register; however, at the time of his release, the [Indiana] Registry may make a final decision as to whether Defendant is required to register on the indictment, judgment, or committal order, other relevant conduct. In other words, right now I'm basing it on what they told me. That's liable to change at any time." (Resent. Tr. at 12.)

Judge Lozano was fully aware of the lack of clarity around the issue of SORNA in this case, hence the provisional ruling. As the undersigned reviews the matter today, it must acknowledge that the current record does not contain evidence that non-consensual sex occurred in connection with defendant's criminal conduct, as defendant points out. Thus, the court would be inclined to find that defendant is not subject to the requirements of SORNA, as was advocated by all parties involved – the defendant, the Government, and the Probation Department– during resentencing. The court need not issue such a ruling, however, because defendant is not requesting it. (DE # 156 at 3-4.)

Nonetheless, the court finds that striking the SORNA condition in this case and at this time is appropriate, because to impose it would be a greater deprivation of liberty than is reasonably necessary to achieve the goal of deterrence, incapacitation,

and rehabilitation. *See United States v. Cruz-Rivera,* 74 F.4th 503, 510 (7th Cir. 2023); 18 U.S.C. § 3583(d)(2). As the court explains in more detail below, a lifetime term of supervised release will continue to apply to defendant for the time being. This lifetime term requires that, amongst other things, defendant comply with various reporting and visitation requirements, maintain lawful employment, submit to drug testing, and participate in programming related to the issues of mental health and domestic violence. (DE # 120.) A lifetime term of supervision with such conditions adequately promotes the goals of deterrence, incapacitation, and rehabilitation. Removing the tether linking the legally-murky issue of SORNA registration to defendant's term of supervised release is appropriate in light of the extraordinary length of supervision and the remaining conditions.

It is important to note that the court's decision to eliminate SORNA compliance as a condition of defendant's supervised release does not effect the independent operation of the SORNA statute itself. SORNA still requires a sex offender to register as such, and a sex offender may still be prosecuted for failure to register under 18 U.S.C. § 2250, whether or not a court has imposed registration as a condition of supervision. A conviction under this statute carries a possible penalty of ten years imprisonment. *Id.* The court strongly urges defendant to consider these facts if the relevant State authorities have informed defendant (or inform him in the future) that he is subject to registration in a jurisdiction.

6

As the court already briefly noted, defendant's request to reduce his lifetime term of supervision to five years is denied. The court has considered defendant's argument that he has completed three-and-a-half years of supervision without incident. This is a commendable achievement. The court is also aware of the fact that defendant's criminal activity did not involve children. However, the court has a responsibility to protect adult members of society as well (including, in this case, young women), from individuals with a proven track record of abuse and trafficking for their own gain. The court is also cognizant of defendant's relatively young age (44) and his crime of conviction (human trafficking with intent to engage in prostitution), and how easily defendant could fall back into a lifestyle involving the same crimes. As Judge Lozano articulated when he imposed the lifetime term of supervision during resentencing, "it's easy money . . . she does all the work and you get all the money, that's easy to become habit forming." (Resent. Tr. at 49.) Though further progress and law-abiding behavior may change the court's assessment in the future, the nature of defendant's crime of conviction and the risk of defendant's recidivism is too great at this time to justify any reduction in the duration of supervision.

IV.    **CONCLUSION**

For the foregoing reasons, defendant's motion to modify the duration and conditions of supervised release (DE # 142) is **GRANTED, in part, and DENIED, in part.** The court **STRIKES** the condition of supervision related to compliance with the requirements of the Sex Offender Registration and Notification Act, but defendant

remains on a lifetime term of supervised release. Defendant's related motion to

supplement the record is **GRANTED** (DE # 156), and the motion for hearing is

**DENIED** (DE # 151).

**SO ORDERED.**

Date: August 30, 2024

s/James T. Moody _____
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

45D10-2502-MI-000059
Lake Superior Court, Civil Division 6

Filed: 2/3/2025 8:32 PM
Clerk
Lake County, Indiana

🇺🇸 An official website of the United States government, Department of Justice.
Here's how you know



**Home** / **SORNA**

# Current Law

# SORNA 🔗

SORNA is the Sex Offender Registration and Notification Act, which is Title I of the Adam Walsh Child Protection and Safety Act of 2006 (Public Law 109-248). SORNA is codified at 34 U.S.C. § 20901 et seq. SORNA provides a comprehensive set of minimum standards for sex offender registration and notification in the United States. SORNA aims to close potential gaps and loopholes that existed under prior law and generally strengthens the nationwide network of sex offender registration and notification programs. Additionally, SORNA does the following:

- Extends the jurisdictions in which registration is required to include federally recognized Indian tribes, in addition to states, the District of Columbia and the principal U.S. territories.
- Incorporates a more comprehensive group of sex offenders and sex offenses for which registration is required.
- Requires sex offenders to register and keep their registration current in each jurisdiction where they live, work or go to school.
- Requires sex offenders to provide more extensive registration information.
- Requires sex offenders to make periodic in-person appearances to verify and update their registration information.
- Expands the information available to the public regarding registered sex offenders.
- Makes changes in the required minimum duration of registration for sex offenders.

# Legislation That Amended SORNA 🔗

**Keeping the Internet Devoid of Predators Act (KIDS Act)**. To address the issue of online safety, the 2008 KIDS Act made the following changes to SORNA —

- Required jurisdictions to collect sex offenders' internet identifiers in the registration process.
- Exempted posting of internet identifiers on any registration jurisdiction's public sex offender registry website.

**Military Sex Offender Reporting Act**. As part of the Justice for Victims of Trafficking Act of 2015, and as an amendment to SORNA, these sections —

- Required the Department of Defense to submit information on any sex offender convicted via court-martial to NSOR and NSOPW.

**International Megan's Law**. To address international travel by registered sex offenders, this 2016 law mandated the following —

- Required offenders to provide advance notice of any intended international travel.
- Required jurisdictions to submit international travel information. (See the Information Required for Notice of International Travel below for more details.)

# Attorney General Guidelines 🔗

In addition to SORNA's codified requirements, the Attorney General has issued guidelines and a rule to assist jurisdictions with implementation of the law, and the SMART Office has issued implementation documentation with additional guidance. Jurisdictions should use these documents, along with the statute (P.L. 109-248) and the guidelines and regulations issued by the Attorney General, when developing legislation and policies to substantially implement SORNA.

**Supplemental Guidelines for Juvenile Registration Under the Sex Offender Registration and Notification Act**

The Attorney General issued these Supplemental Juvenile Registration Guidelines to provide guidance regarding the substantial implementation of the juvenile registration requirement under SORNA.

Effective date: August 1, 2016

**Supplemental Guidelines for Sex Offender Registration and Notification**

The Attorney General issued these Supplemental Guidelines to address a number of issues related to implementation of the SORNA requirements, including public website posting of sex offender information such as email addresses and other internet identifiers, public notification of juveniles adjudicated delinquent for serious sex crimes, international travel reporting requirements and the treatment of Indian tribes newly recognized by the federal government subsequent to the enactment of SORNA.

Effective date: January 11, 2011

---

### The National Guidelines for Sex Offender Registration and Notification

The Attorney General issued these Final Guidelines to interpret and implement SORNA. The Final Guidelines provide jurisdictions with guidance, explanation and advice regarding the administration and implementation of SORNA.

Effective date: July 2, 2008

---

# Rule 🔗

### Registration Requirements Under the Sex Offender Registration and Notification Act

The Attorney General issued this Rule to provide a concise and comprehensive statement of what sex offenders must do to comply with SORNA's requirements.

Effective date: January 7, 2022

**Retroactive Applicability of the Sex Offender Registration and Notification Act (SORNA)**

The Attorney General published this Rule to specify that SORNA applies retroactively to all sex offenders, including sex offenders convicted of the offense for which registration is required before the enactment of SORNA.

Interim Rule effective date: February 28, 2007 | Final Rule effective date: January 28, 2011

---

# SORNA Implementation Documents 🔗

The SMART Office has developed a **series of documents** related to SORNA. These documents provide further definition, guidance and direction on a number of topics to assist jurisdictions

with the implementation of SORNA.

SORNA implementation documents address the following topics:

1. [Substantial Implementation of SORNA](#)
2. [Byrne JAG Grant Reductions under SORNA](#)
3. [In Person Verification](#)
4. [Community Notification Requirements of SORNA](#)
5. [Using Risk Assessment Under SORNA](#)
6. [Determination of Residence, Homeless Offenders and Transient Workers](#)
7. [Text of Registration Offense](#)
8. [Military Convictions Under SORNA](#)
9. [Fingerprints and Palm Prints](#)
10. [Registering Tribal Convictions under SORNA](#)
11. [State and Tribal Information Sharing](#)
12. [Clarification of Registration Jurisdictional Issues](#)
13. [Tribal Election, Delegation to the State and Right of Access](#)
14. [Information Required for Notice of International Travel](#)
15. [Juvenile Registration and Notification Requirements Under SORNA](#)

# Applicability and Offenses 🔗

**Jurisdictions Included Under SORNA**

**SORNA Applicability**

Sex Offenses Under SORNA

The convictions for which SORNA requires registration include convictions for sex offenses by any U.S. jurisdiction, including convictions for sex offenses under federal, military, state, territorial, tribal or local law. Foreign convictions are also covered if certain conditions are satisfied.

Generally speaking, the following are considered sex offenses under SORNA.

**SPECIFIED OFFENSES AGAINST MINORS**

## SPECIFIED FEDERAL OFFENSES

- 18 U.S.C. §1591 (Sex Trafficking of Children)
- 18 U.S.C. §2241 (Aggravated Sexual Abuse)
- 18 U.S.C. §2242 (Sexual Abuse)
- 18 U.S.C. §2243 (Sexual Abuse of a Minor or Ward)
- 18 U.S.C. §2244 (Abusive Sexual Contact)
- 18 U.S.C. §2245 (Offenses Resulting in Death)
- 18 U.S.C. §2251 (Sexual Exploitation of Children)
- 18 U.S.C. §2251A (Selling or Buying of Children)
- 18 U.S.C. §2252 (Material Involving the Sexual Exploitation of Minors)
- 18 U.S.C. §2252A (Material Containing Child Pornography)
- 18 U.S.C. §2252B (Misleading Domain Names on the Internet)
- 18 U.S.C. §2252C (Misleading Words or Digital Images on the Internet)
- 18 U.S.C. §2260 (Production of Sexually Explicit Depictions of a Minor for Import in to the United States)
- 18 U.S.C. §2421 (Transportation of a Minor for Illegal Sexual Activity)
- 18 U.S.C. §2422 (Coercion and Enticement of a Minor for Illegal Sexual Activity)
- 18 U.S.C. §2423 (Transportation of Minors for Illegal Sexual Activity, Travel With the Intent to Engage in Illicit Sexual Conduct with a Minor, Engaging in Illicit Sexual Conduct in Foreign Places)
- 18 U.S.C. §2424 (Failure to File Factual Statement about an Alien Individual)
- 18 U.S.C. §2425 (Transmitting Information about a Minor to further Criminal Sexual Conduct)

## SEXUAL ACTS AND SEXUAL CONTACT OFFENSES

## SPECIFIED MILITARY OFFENSES

**ATTEMPTS AND CONSPIRACIES**

See Part IV A-D of the Final Guidelines for more detail.

### Offenses Involving Consensual Sexual Conduct

SORNA section 111(5)(C) addresses the minimum standards for requiring sex offender registration for consensual sexual conduct under the Adam Walsh Act. SORNA does **not** require registration in the following situations: 1) If both participants are adults, and neither is under the custodial authority of the other (e.g., inmate/prison guard) and the conduct was consensual, then this conduct does not constitute a registerable sex offense for purposes of the Adam Walsh Act. 2) With respect to acts involving at least one minor (person under 18) who engages in consensual sexual conduct, the following minimum standards apply: Where both participants are at least 13 years old and neither participant is more than 4 years older than the other, a sex offense conviction based on consensual sexual conduct does not require registration under the Adam Walsh Act. In all situations, jurisdictions have discretion to exceed the minimum standards of SORNA and require registration upon convictions based on consensual sexual conduct.

### Convictions Under SORNA

A sex offender is "convicted" for SORNA purposes if the sex offender has been subject to penal consequences based on the conviction, however it may be styled. Likewise, the sealing of a criminal record or other action that limits the publicity or availability of conviction information, but does not deprive the conviction of continuing legal validity, does not change its status as a "conviction" for purposes of SORNA.

"Convictions" for SORNA purposes include convictions of juveniles who are prosecuted as adults. It does not include juvenile delinquency adjudications, **except** under the circumstances specified in 34 U.S.C. §20911(8), which stipulate juvenile registration only if the juvenile was at least 14 years old at the time of the offense and was adjudicated delinquent for committing (or attempting or conspiring to commit) a sexual act with another by force, by the threat of serious violence, or by rendering unconscious or drugging the victim.

See Part IV.A of the Final Guidelines for more detail.



## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF INDIANA
### UNITED STATES V. MONTELL VALENTINO WILLIAMS, DKT. 0755 2:12CR00144-1

### <u>OBJECTIONS</u>

#### <u>By the Government</u>

On July 13, 2016, the Government reported having no objections to the Revised Presentence Report dated June 23, 2016.  On July 28, 2016, the Government responded in writing to the objections of the defendant.

#### <u>By the Defendant</u>

On July 18, 2016, Defense Counsel submitted several objections to the Revised Presentence Report regarding: guideline calculations; criminal history category; and objections pertaining to the Proposed Conditions of Supervised Release, as presented in Part F of the report.

1. **Pages 8-9 , Paragraphs 23 – 33, (Offense Level Computation)**

   A) **Defendant:**  Defendant has directed counsel to object to these paragraphs because he believes that his Total Offense Level was miscalculated due to the misapplication of USSG §2A3.1.  The defendant believes that his guidelines should be properly calculated under USSG §2G1.1.  In addition, the defendant directed the undersigned counsel to specifically object to the enhancement outlined in paragraph 25 because it "derived from enhancement for criminal sexual abuse (2A3.1) which I never admitted to or any finding of facts has been submitted to the courts."  Defendant asserts that his Adjusted Offense Level is 18 and his Total Offense Level is 15, after the deduction for acceptance of responsibility.

   B) **Government:** Defendant objects to Probation's Guideline calculation generally, arguing that Guideline § 2A3.1 was "misapplied" and that he "never admitted to," nor did the Court make any "finding of facts" supporting its application.  Defendant is mistaken.

   Defendant *did agree,* in his plea agreement, to application of the cross-reference to § 2A3.1 and the enhancements in § 2A3.1(b)(1) and (b)(4).  *See* DE # 40, para. 7(d)(ii) and (iii).  Defendant also acknowledged those plea provisions while under oath at his change of plea hearing and *confirmed that he was in agreement with them*.  *See* DE # 76 at pp. 33-36.  Consistent with those positions, Defendant did not object to application of this cross-reference at his initial sentencing hearing.

   Defendant has apparently decided to take a different tack on remand and ignore his prior agreements and sworn statements without seeking to withdraw from his plea

agreement with the government.  Defendant wants to have his cake and eat it too; he wants to maintain the benefits of the plea, which include the government's agreement to dismiss several charges carrying 15-year mandatory minimum sentences, thereby capping at 10 years his possible sentence, while disregarding completely the plea provisions which raise his applicable Guideline level.  Defendant's plea agreement is a contract to which he is legally bound, however, and the government elects not to relieve him of his obligations under that agreement.

If called to testify, victim J.S. would affirm as true the facts supporting the cross-reference to § 2A3.1 (which is set forth in § 2G1.1(c)(1)) and application of § 2A3.1(b)(1) which are found in PSR paragraph 13(vi).  That paragraph reads:

In December 2010, Williams got angry after J.S. was rude to him . . . [so he] beat J.S. with a plastic rod, then pinned J.S. down and had sex with her.  J.S. asked Williams to get off of her.  Williams continued having sex with her, while hitting her in the face, and calling her names.  Afterwards, Williams fell asleep.

Likewise, if called to testify J.S. and other witnesses would testify to the facts supporting application of § 2A3.1(b)(4)(B), as explained in PSR paragraphs 10-11, 13(v)-(vi), 13(ix), 13(xiii), 13(xiv), 14-17, and 18(iv).

But because Defendant agreed to the application of the cross-reference and those enhancements in his plea agreement and at his change of plea hearing, the government did not previously, and does not now intend to, prove up the facts supporting those provisions by calling the victims and others to testify.  Indeed, the *whole point* of offering Defendant his incredibly favorable plea agreement was to spare the victims the trauma of appearing in public, facing Defendant, and having to relive these events.

Accordingly, the government respectfully requests that the Court credit the agreement Defendant made in his plea agreement and overrule Defendant's newly raised objection to his Guideline calculation.  Alternatively, the government asks the Court to withdraw Defendant's plea agreement and guilty plea to Count 3 due to his breach and reinstate the previously dismissed charges under 18 U.S.C. § 1591, which, once proven, will allow the government to argue for the much higher sentence Defendant deserves.

C) **Probation:** Defendant is arguing that his guidelines were applied incorrectly. Probation believes the calculation in the presentence report is correct.  In fact, the defendant signed a plea agreement in which he agreed that due to his offense conduct, his sentence should be calculated under USSG §2A3.1.  Pursuant to the written plea agreement he further agreed to a 4-level enhancement pursuant to §2A3.1(b)(1).

Probation believes that the guideline calculations in the original and the revised PSR are correct and the Court concluded this at the original sentencing hearing.

Defendant pled guilty to Count 3, a Mann Act Violation pursuant to Title 18 U.S.C. §2421. The sentencing guideline for this violation is found in USSG §2G1.1. Pursuant to §2G1.1(c)(1) if the offense involves conduct described in 18 USC §2241(a) or (b), the guideline in §2A3.1 is to be applied.

USSG 2G1.1, Application Note 4(A) indicates that for the purposes of subsection (c)(1), conduct described in 18 USC §2241(a) or (b) is engaging in, or causing another person to engage in, a sexual act with another person by (i) using force against the victim; (ii) threatening or placing the victim in fear that any person will be subject to death, serious bodily injury or kidnapping; (iii) rendering the victim unconscious; or (iv) administering by force or threat or force, a drug intoxicant; or other similar substance and  thereby  substantially impairing  the ability of the victim to appraise or control conduct.

Contained within the written plea agreement signed by the defendant, Mr. Williams agrees that his offense conduct is described in 18 USC §2421(a) or (b).

2.   **Page 13, Paragraph 55 & 57 (Criminal History Point Computation)**

A) **Defendant:**   Defendant directed counsel to object that he was improperly assessed one criminal history point for his plea of guilty to theft.  The defendant asserts that he should not receive any criminal history points because his conviction was a misdemeanor which requires a sentence of "more than 12 months" to apply.  The defendant believes that, since he was sentenced to only 12 months, he should not receive one criminal history point for this prior sentence.  Defendant asserts that his subtotal criminal history score should be seven (7) rather than eight (8).

B) **Government:**  Defendant next disputes the assessment of one criminal history point for his guilty plea to Theft under Illinois law.  Defendant argues that no criminal history points should be assessed for this conviction because he was sentenced to "only 12 months."  Probation's assessment of a single point for this conviction appears proper under Guideline § 4A1.1(c) and § 4A1.2(f).

C) **Probation:** USSG §4A1.2(c)(1), identifies several petty and misdemeanor offenses that are only "countable" if defendant was sentenced to a term of probation of more than one year, or a term of imprisonment of at least 30 days.  Theft is not one of those listed offenses, nor is it similar to any of the offenses listed.  Sentences for misdemeanor and petty offenses are countable and this defendant's Theft charge under Champaign County Circuit Court case number 09CM1409 is a countable offense under §4A1.1 and §4A1.2(f). There was a plea of guilty and finding of guilt in this matter.  The assessment of one (1) criminal history point in this case is correct.

3.   **Page 13, Paragraph 58 & 59  (Criminal History Category Computation)**

A) **Defendant:** The defendant objects to being assessed two criminal history points because he does not believe that he committed the instant offense while under a criminal justice sentence. Specifically, the PSR references the defendant's conviction for theft in Champaign, Illinois, in which he pled guilty and was sentenced on January 21, 2010, to 12 months conditional discharge. The Indictment in Count 3 alleged that he violated the Mann Act between June 2011 and February 5, 2012. Therefore, the defendant presumably completed his sentence on January 21, 2011, which was five months before the underlying conduct began in Count 3. Therefore, two criminal history points should not have been applied in this paragraph. Defendant asserts that his criminal history points should total seven (7), resulting in a Criminal History Category of IV.

B) **Government:** Next Defendant argues that because he did not commit the specific offense to which he pled guilty during the 12-month conditional discharge period following his Illinois Theft conviction, two points should not be added under § 4A1.1(d). That Section says to add two points "if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release or escape status." In turn, § 1B1.1(H) defines "offense" as:

> [T]he offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or otherwise clear from the context. The term 'instant' is used in connection with 'offense,' 'federal offense,' or 'offense of conviction,' as the case may be, to distinguish the violation for which the defendant is being sentenced from a prior or subsequent offense, or from an offense before another court (e.g., an offense before a state court involving the same underlying conduct).

Thus, "instant" in § 4A1.1(d) distinguishes Williams' offense in this case from his prior Theft offense under Illinois law, and the meaning of "offense" here includes relevant conduct under § 1B1.3. Because the offense charged in Count 1 is relevant conduct to Williams' offense of conviction in Count 3, and because the conduct supporting Count 1 occurred between on or about October 2010 and February 5, 2012 (i.e., during the term of Williams' 12-month conditional discharge), application of the two-point enhancement is proper. Defendant's criminal history computation is correct.

C) **Probation:** Pursuant to USSG §4A1.1(d) two points are added if the defendant committed any part of the instant offense (i.e. any relevant conduct) while under any criminal justice sentence. Williams pled guilty to a Theft charge in Sagamon County Circuit Court (docket #09CM01409), and on 1/21/2010, he was sentenced to a 12 month conditional discharge term and a fine.

Defendant's offense of conviction (Count 3) includes the time period from June of 2011, through February 5, 2012. But for the purposes of applying §4A1.2(d), the time periods also include the dates of defendant's criminal conduct relevant to the offense

of conviction.   As indicated in paragraph 13 of the PSR, there is relevant conduct that occurred in December of 2010, while defendant was under this "conditional discharge."  Therefore, probation believes this two-level increase in the criminal history points was applied correctly.

4.  **Page 21, Paragraph 132  (Guideline Range)**

   A)  **Defendant:**  Defendant asserts that his Total Offense Level is 15, and his Criminal History Category IV, resulting in a Guideline range of 37 – 46 months imprisonment.

   B)  **Government:**  For the reasons explained in response to Objections 1 through 3 above, Defendant's applicable Guideline range was properly calculated by Probation.

   C)  **Probation:**  Probation maintains that defendant's Total Offense Level and Criminal History Category contained in the PSR are correct.  Total Offense Level is 33; Criminal History Points equal 10; and the Criminal History Category is V; calling for a guideline range of 210 – 262 months (120 months statutory maximum for Count 3).

5.  **Page 24, Mandatory Condition of Supervision #5.**

   A)  **Defendant**:  The defendant has directed his counsel to file an objection to the requirement that he register under SORNA as a condition of his supervision.  He requests that the Court not impose this as a condition of supervision.

   B)  **Government:**  Defendant next objects to the condition requiring him to comply with the Sex Offender Registration and Notification Act (SORNA).  Defendant has apparently forgotten that he agreed, in his plea agreement, DE # 40, para. 7(d)(iv), to this condition as well:

> The United States of America and I further agree to recommend that the Court order, as a mandatory condition of my supervised release, that I register as a sex offender and comply with state sex offender registration requirements pursuant to 18 U.S.C. § 3583(d) and 42 U.S.C. §16913. I have also been advised and understand that under the Sex Offender Registration and Notification Act, a federal law, I must register and keep the registration current in each of the following jurisdictions: the location of my residence; the location of my employment; and, if I am a student, the location of my school. I understand that such registration will require that I provide information that includes my name, residence address, and the names and addresses of any places at which I will be an employee or student. I also understand that I must update my registration not later than three business days after any change of name, residence, employment, or student status. I understand that failure to comply with these obligations may subject me to prosecution for failure to register under federal law, 18 U.S.C. § 2250, which is punishable by a fine and/or imprisonment. I further agree that as long as I remain on supervised release, I will provide

written documentation, as often as requested by my assigned United States Probation officer, that my sex offender registration remains in good standing.

**C) Probation:** Probation does not believe the defendant is required to register under SORNA. This opinion is based on my review of SORNA and discussions with personnel from the Lake County Sex Offender Registry. Prior to the original sentencing in 2013, probation was of the same opinion. Probation included the sex offender registration condition in PART F of the Revised PSR because this condition was ordered at the original sentencing in 2013.

6. **Page 25-26, Discretionary Condition of Supervision #6.**

   A) **Defendant:** Defendant objects to this condition because it is cumulative to Mandatory Condition #1. Since the defendant would violate federal law under Mandatory Condition #1, by possessing "a firearm, ammunition, destructive device, or other dangerous weapon." The imposition of this condition is cumulative and unnecessary.

   B) **Government:** Defendant asserts that Discretionary Condition # 6, which prohibits him from possessing "a firearm, ammunition, destructive device, or any other dangerous weapon," is "cumulative and unnecessary" given the inclusion of Mandatory Condition #1, which states "Defendant shall not commit another federal, state or local crime." Whether cumulative or not, the government sees no harm in specifically warning Defendant that while on supervised release he is prohibited from possessing a firearm, ammunition, destructive device or other dangerous weapon.

   C) **Probation:** Defendant is a convicted felon, and it is illegal for him to possess a firearm or ammunition, and probation agrees that such activity would be covered under Mandatory Condition of Supervision #1, "You shall not commit another federal, state or local crime." However, Discretionary Condition #6 should be included because it provides a specific reminder to the defendant that he is not to possess a firearm, ammunition, destructive device or dangerous weapon. This condition should be included as it addresses a public safety issue, and this condition assists the defendant by informing him of specific activities that he may not engage in, which will help the defendant complete his term of supervision successfully.

7. **Page 29, Discretionary Condition of Supervision #22.**

   A) **Defendant**: Defendant objects to Discretionary Condition #22 in its entirety because it enforces him to waive his rights pursuant to the Fourth and Fifth Amendments to the U.S. Constitution.

   B) **Government:** Defendant next objects, on Fourth and Fifth Amendment grounds, to the condition allowing for the plain-view search of his person or property at certain

hours of the day based upon reasonable suspicion "concerning a violation of a condition of supervision or unlawful conduct by defendant." Warrantless searches of convicted criminals who remain under court supervision have long been upheld by the Seventh Circuit, however, so long as their application to a particular defendant is justified based upon his or her criminal history, offense conduct or personal characteristics. *See, e.g., United States v. Monteiro*, 270 F.3d 465 (7th Cir. 2001); *United States v. Johnson*, 542 Fed. Appx. 516 (7th Cir. 2013). In response to the constitutional argument raised by Defendant, the Seventh Circuit recently reaffirmed:

> Although it is true that persons on supervised release, like prisoners, do not relinquish all constitutional rights, those rights are not unfettered. A court may impose conditions of supervised release which implicate fundamental rights so long as those conditions are reasonably related to the ends of rehabilitation and protection of the public from recidivism.

*United States v. Armour*, 804 F.3d 859, 870 (7th Cir. 2015) (quoting *United States v. Sines*, 303 F.3d 793, 801 (7th Cir. 2002) (citations omitted)).

In this case Probation has justified application of this condition to Defendant by pointing out his "history of crimes of violence, controlled substance offenses, and the instant sex offense." Probation further explains that the condition is needed "to provide public protection, reduce the risk of recidivism, and provide defendant rehabilitation." Accordingly, the government urges the Court to overrule Defendant's objection to this special condition.

C) **Probation:** Defendant has a history of violence. This condition is imposed to protect the public and address the issue of rehabilitation. As stated in this condition: "Any search beyond plain-view requires prior approval of the Court."

Respectfully Submitted,
Paula E. Pramuk
Chief United States Probation Officer

By:    David  Beier
       United States Probation Officer

Approved:

s/Peter A. Sgroi

Peter A. Sgroi
Supervising United States Probation Officer

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.  2:12 CR 144 RL-APR |
| | ) | |
| MONTELL WILLIAMS | ) | |

## GOVERNMENT SENTENCING MEMORANDUM

Comes now the United States of America, by David Capp, United States Attorney for the Northern District of Indiana, through Jill R. Koster, Assistant United States Attorney, to address the issues now ripe for this Court's consideration as to Defendant Montell Williams.

### A. DEFENDANT HAS BREACHED HIS PLEA AGREEMENT

Upon remand, Defendant sought, with the government's agreement, a full resentencing hearing, which the Court ordered.  *See* DE # 95, DE # 98 *and* DE # 101.  Thereafter, Defendant raised new objections to Probation's calculation of his applicable Guideline range – objections not raised at his initial sentencing hearing.  *See* DE # 111 (setting forth Defendant's objections and the responses of the government and Probation).  Defendant's new objections, and the arguments made in support of those objections in his Sentencing Memorandum, DE # 114, directly contradict agreements he made with the government which were set forth in his plea.  *Compare id.* at 1

1

(objecting to application of the cross-reference to Guideline § 2A3.1) *with* DE # 40 at para. 7(d)(iii) ("The United States of America and I agree that the cross-reference set forth in § 2G1.1(c)(1) applies due to my offense conduct"); *compare* DE # 111 (objecting to the requirement that he register as a sex offender) *with* DE # 40 at para. 7(d)(iv) ("The United States of America and I further agree to recommend that the Court order, as a mandatory condition of my supervised release, that I register as a sex offender and comply with state sex offender registration requirements pursuant to 18 U.S.C. § 3583(d) and 42 U.S.C. § 16913"); *and compare* DE # 114 at 3 (arguing that "the correct guideline for [him] is a Level 15") *with* DE # 40 at para. 7(d)(iii) ("Based on the application of the above-referenced specific offense characteristics, the United States of America and I agree that the Guideline level I will face if I receive full credit for acceptance of responsibility is a Level 31").

As explained in the government's recent motion, it appears Defendant wants to escape application of the unfavorable provisions of his plea while simultaneously benefiting from the favorable ones. *See* DE # 115 at 2. The government sought a continuance of Defendant's resentencing hearing so it could weigh its options. *Id.*

One option the government believes it has given this development is to seek to withdraw Defendant's plea due to his breach of the parties'

2

agreement. *See* DE # 40 at para. 7(h) (acknowledging that if he violates any provision of his plea agreement, the government can ask the Court to "declare this entire plea agreement null and void, in which case [Defendant] can then be prosecuted for all criminal offenses that [he] may have committed"). That approach would allow the government to prosecute Defendant for both of his violations of 18 U.S.C. § 1591(a), each of which carries a statutory mandatory minimum sentence of incarceration of 15 years, as well as his other Mann Act offenses. *See* DE # 38 (charging Defendant, in Counts 1 and 2, with sex trafficking victims J.S. and E.D. by force, fraud and coercion and, in Counts 4 and 5, with Mann Act offenses involving E.D. and victim S.H.).

Rather than pursue that course of action, however, the government has decided to present to the Court evidence supporting Probation's Guideline calculations and to urge the Court to once again sentence Defendant to a term of incarceration of 120 months. The government further asks, in light of Defendant's objection to registering as a sex offender and Probation's recent determination that he likely cannot be forced to do so, *see* DE # 111 at pp. 5-6, that the Court revise its prior sentence to require that Defendant remain on supervised release for the rest of his life once he has served his sentence of incarceration. As discussed in more detail below, a lifetime term of supervised release, as contemplated by 18 U.S.C. § 3583(k), is appropriate for Defendant because of his violent offense and relevant conduct, his personal

3

history and characteristics, and the risk of danger he poses to society

generally and to young women specifically.

In its recent decision in *United States v. Mobley*, 2016 U.S. App. LEXIS

14972 (7th Cir. August 15, 2016), the Seventh Circuit explained:

> In the course of imposing a new sentence, the district court is authorized to reconsider all elements of the sentence, including in particular the prison term and the conditions of supervised release. It may consider any relevant evidence or arguments that are properly admissible at the new hearing. While the district court is not required to consider new arguments or evidence about the term of imprisonment (or any other element of the sentence), it must exercise its discretion in declining to do so—that is, it is required to acknowledge that it has this power and explain why or why not it wishes to exercise it.

*Id.* at *9-10. The government respectfully requests that the Court consider

the new evidence submitted herewith in support of its requested sentence of

120 months of incarceration followed by a lifetime term of supervised release.

### B. PROBATION PROPERLY CALCULATED DEFENDANT'S GUIDELINE RANGE

Probation's application of the cross-reference set forth in Guideline §

2G1.1(c)(1) is proper. That provision states: "If the offense involved conduct

described in 18 U.S.C. § 2241(a) or (b) or 18 U.S.C. § 2242, apply § 2A3.1

(Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse)."

Probation also correctly applied the 4-level enhancement set forth in §

2A3.1(b)(1) because Defendant's offense indeed involved conduct described in

18 U.S.C. § 2241(a). Finally, Probation was right to apply the 2-level

4

enhancement in § 2A3.1(b)(4)(B) due to Defendant's offense causing serious bodily injury to victim J.S.

Defendant pled guilty to Count 3 of the Superseding Indictment.   That offense charged him with knowingly transporting victim J.S. "in interstate commerce, i.e., from Indiana to Illinois and from Indiana to Georgia, with intent that she engage in prostitution."  DE # 38.  But Defendant was not charged with committing this crime in a single instance, he was charged with committing it over an eight-month period – i.e., from "[b]etween on or about June 2011 and on or about February 5, 2012."  DE # 38.

The Guidelines define the term "offense" to include "the offense of conviction <u>and all relevant conduct under § 1B1.3 (Relevant Conduct)</u> unless a different meaning is specified or is otherwise clear from the context." Guideline § 1B1.1(H) (emphasis added).  No other or different meaning is specified or otherwise clear from the context of § 2G1.1(c)(1) or § 2A3.1(b)(1). Accordingly, in deciding whether these enhancements apply, the Court can and should consider all of Defendant's conduct falling within the Guideline definition of "relevant conduct."  That definition includes:

> all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

Guideline § 1B1.3.

As explained above, Defendant pled guilty to transporting victim J.S. in interstate commerce with intent that she engage in prostitution from on or about June 2011 to on or about February 5, 2012. Each of the offenses charged in Counts 1, 2, 4, and 5 of the Superseding Indictment likewise involve prostitution. *See* DE # 38. Count 1 specifically involves victim J.S. *Id.* Counts 2 and 4 specifically involve another victim identified as E.D. *Id.* And Count 5 names yet another victim, S.H. The conduct alleged in each of Counts 2, 4 and 5 *occurred within the time-frame alleged*– i.e., during the commission of – Count 3, Defendant's count of conviction. And although Count 1 alleges that Defendant trafficked victim J.S. using force, fraud and coercion beginning in or about October 2010 – eight months prior to transporting her across state lines as alleged in Count 3 – there can be no doubt that Defendant's forced prostitution of J.S. was carried out *in preparation for* his later crime of transporting her across state lines with intent that she engage in further prostitution. Accordingly, <u>all</u> of the offenses alleged in the Superseding Indictment fit within the Guideline definition of "relevant conduct." Put another way, because of their timing and because the conduct alleged in each count brought against Defendant involves his prostitution of women, *all* of that previously charged conduct fits within the meaning of "the offense" under § 1B1.1(H).

6

1. **Defendant's offense "involved conduct described in 18 U.S.C. § 2241(a)"**

Probation correctly applied the cross-reference to § 2A3.1 and the 4-level enhancement in § 2A3.1(b)(1).  Each applies if the preponderance of the evidence shows that Defendant's offense involved conduct described in 18 U.S.C. § 2241(a) ("Aggravated Sexual Abuse").

Section 2241(a) prohibits causing another person to engage in a sexual act by using force or by threatening or placing the person in fear that any person will be subjected to death, serious bodily injury, or kidnapping, or attempting to do so.  There is no question that Defendant's offense conduct meets that standard.

Provided to the Court herewith is a binder with 6 tabs containing evidence collected in this case, including sworn testimony before the Grand Jury from victims J.S. and E.D., as well as witness C.R.  A copy of the binder is being made available to defense counsel for review prior to Defendant's re-sentencing hearing.  The original binder will be moved into evidence under seal at Defendant's August 30, 2016 re-sentencing hearing.

"In the sentencing context, the district court is not bound by the rules of evidence and, so long as it is reliable, may consider a wide range of evidence, including hearsay, that might otherwise be inadmissable at trial." *United States v. Ghiassi*, 729 F.3d 690, 695-696 (7th Cir. 2013) (citations

omitted); *see also* Fed. R. Evid. 1101(d)(3); U.S.S.G. § 6A1.3(a).  "Moreover, as the Sixth Amendment's confrontation clause does not apply to a sentencing proceeding, the court may rely on the testimony or other statement of a witness even if that witness has not been subject to cross-examination by the defendant."  *Ghiassi*, 729 at 696 (citations omitted); *see also United States v. Harmon*, 721 F.3d 877, 888-889 (7th Cir. 2013); *United States v. Chychula*, 757 F.3d 615 (7th Cir. 2014) (affirming application of the obstruction of justice enhancement based on the defendant's false testimony before the Grand Jury, as proven up with Grand Jury transcripts).

Tab 1 of the binder contains the sworn Grand Jury testimony of victim J.S., who is named in Defendant's count of conviction, Count 3, as well as in Count 1.  J.S. testified that she did not want to work as a prostitute but that Defendant, her then-boyfriend, caused her to do so by using force, fraud and coercion, and that he kept all the money she earned.  *See* Tab 1 at 8-20. According to J.S., Defendant also frequently forced himself on her sexually; Defendant treated J.S. as his property and had sex with her whenever and however he pleased.  *Id.* at 20-21.  At times during sex, Defendant would tie J.S. up, restrain her with handcuffs, or bite her hard enough to cause marks and bruising.  *Id.*  J.S. described in detail several of the more brutal beatings she suffered at Defendant's hands.  *See id.* at 22-33, 47-58 and 63-66.  In the

midst of one beating, Defendant pinned J.S. down and raped her while hitting her in the face and calling her a "bitch and ho." *Id.* at 33.

Tab 2 of the binder contains photographs of J.S. taken at a hospital after one beating by Defendant. J.S.'s back, arms and legs are covered with bruises, slashes and cuts, her front tooth is broken, and her left hand is cut open and bleeding. Tab 2. The photographs unquestionably demonstrate that J.S. was seriously injured by Defendant. *Id.*

At Tab 3 of the binder the Court will find various police reports relating to Defendant's extreme physical abuse of victim J.S. Unfortunately due to her (clearly justified) fear of Defendant, J.S. did not ultimately cooperate in the prosecution of Defendant for that heinous conduct.

Victim E.D. also testified before the Grand Jury. *See* Tab 4. E.D. explained that she met Defendant after answering an advertisement for a business called "Diamond Dolls" that promised she could make money fast. *Id.* at 6. She needed the money to hire a lawyer to assist her in reacquiring custody of her daughter. *Id.* After she answered the ad, Defendant came to pick E.D. up and immediately drove her to a hotel room where he directed her to have sex with a stranger in exchange for money. *Id.* at 9-11. Although Defendant told E.D. that she would get to keep half of the money she earned, he later caused her to give him the remainder she had earned on her first call and all of the money she earned thereafter. *Id.* at 12-18 and 52-55. E.D.'s

9

description of how Defendant went about pimping women, including his frequent use of force, fraud and coercion, matches that provided by J.S. *See id.* at 19-36, 46-52, and 57-58.

At one point E.D. told Defendant she did not want to go on a call with a "John" who wanted her to pretend to be his niece and then fight during sex, but after Defendant threatened her she went on the call anyway. *Id.* Like J.S., E.D. described Defendant forcing himself on her sexually whenever he pleased. *Id.* at 39-40. And once in Defendant's home, E.D. said she did not feel free to leave. *Id.* at 40-42. When E.D. reached her breaking point, she staged an escape that involved her mother calling law enforcement to report that she was being held against her will. *Id.* at 36-39.

Tab 5 contains police reports that followed E.D.'s escape and started the Federal Bureau of Investigation's involvement in this case. The reports further corroborate the Grand Jury testimony of J.S. and E.D. *See id.* Notably, at pages 11 through 15 of Tab 5, a report of an interview of Defendant can be found. During the interview, Defendant admitted that he knew E.D., J.S. and S.H. all had sex for money and that he took a cut of the profits ("usually at 50%" he claimed). *Id.* Defendant admitted being aware of the prostitution ads placed online for the girls and also to placing ads for "Diamond Dollz" to recruit girls. *Id.* Defendant also admitted to grabbing E.D. around her neck and choking her, and also to shoving E.D.

10

At pages 35-43 of Tab 5, the Court will find interview reports of individuals who encountered J.S. and observed her serious bodily injuries during the time she was with Defendant.  One witness, who had never met J.S. before, described her as being "covered in blood."  Tab 5 at 35.  He told law enforcement that when he met J.S. there was "blood everywhere"; J.S.'s face was bloody and she had gashes on her back.  *Id.*  (See Tab 2 for photos of J.S. following that same incident and Tab 3 for other related police reports.)

Finally, at Tab 6, the government provides a transcript of the Grand Jury testimony of C.R.  No charges were brought against Defendant based on his prostitution of C.R., but C.R.'s testimony provides further corroboration of the testimony of victims J.S. and E.D.  C.R. met Defendant at a bar in approximately 2007.  Tab 6 at 5.  Thereafter C.R. witnessed Defendant pimping multiple women, including a girl named Jessica who was hit by a car and killed after "the money that she – that she had got from her services got lo[o]se, and she chased it along the highway[.]"  *Id.* at 7.  C.R. knew Defendant to be living with J.S. in 2010, and she knew that Defendant was pimping J.S. at that time.  *Id.* at 9-10.  Defendant, J.S., and another woman he was prostituting, S.H., moved in with C.R. in early 2011.  (S.H. is the named victim in Count 5 of the Superseding Indictment.  *See* DE # 38 at 5.)  C.R.'s description of the rules Defendant set for the girls to follow matches that provided by J.S. and E.D.  *See* Tab 6 at 11-20.  C.R. also described in

11

detail Defendant repeatedly beating victim J.S.  *Id.* at 21-29.  Like he did to victims E.D. and S.H., Defendant also choked and beat C.R.  *Id.* at 30-39.

Based on all of this evidence, the government urges the Court to find that Defendant's "offense," as defined in Guideline § 1B1.1(H), involved conduct described in § 2241(a) and therefore that the cross-reference in § 2G1.1(c)(1) applies, as does the four-level enhancement in § 2A3.1(b)(1).

## 2. Defendant caused the victims to sustain serious bodily injuries

The same evidence summarized above also establishes that Defendant caused his victims to sustain serious bodily injuries.

The Guidelines define "serious bodily injury" as:

> "Serious bodily injury" means injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation.  In addition, "serious bodily injury" is deemed to have occurred if the offense involved conduct constituting criminal sexual abuse under 18 U.S.C. § 2241 or § 2242 or any similar offense under state law.

U.S.S.G. § 1B1.1, Application Note 1L.  Based on this definition, and particularly the presumption it includes, it is clear that Probation properly applied the 2-level enhancement in § 2A3.1(b)(4)(B).  *See also United States v. Newman*, 965 F.2d 206, 212 (7th Cir. 1992) (finding different enhancement for inflicting serious bodily injury in the course of an aggravated assault

appropriate based upon "the combination of bodily and psychological harm in the present case").

In September 2011, Defendant beat J.S. across her back with an electrical cord, then threw her to the floor, kicked her in the face and torso, chipping her front tooth. *See* Tabs 1, 2, 3 and 5. Defendant dropped a 30-lb. dumbbell on J.S.'s chest and poured "Mr. Clean" cleaning solution in her eyes. *Id.* J.S. sustained a deep cut to the palm of her left hand and numerous wounds to her back, arms and legs. The photographs at Tab 2 show the injuries to J.S.'s body. After the neighbor called the police, J.S. was hospitalized for several days where she received stitches to her hand and treatment for two fractured ribs.

Defendant also physically and sexually abused E.D. and C.R., and he used force and threats of death, serious bodily injury, and kidnapping to cause E.D. to engage in prostitution. *See* Tabs 4 and 6.

All of this conduct meets the Guideline definition in § 1B1.1, Application Note 1L.

## C. THE FACTORS SET FORTH IN 18 U.S.C. § 3553(a) SUPPORT A GUIDELINE SENTENCE

The nature and circumstances of Defendant's offense conduct are, in a word, horrific. While himself unemployed and putting forth no effort to earn a living, Defendant prostituted J.S. and E.D. by using force, fraud and

coercion.  He treated them like property; he had sex with them whenever and however he pleased and he caused them to have sex with strangers six days a week for his own personal financial gain.  Defendant debased and demeaned and repeatedly sexually violated victims J.S. and E.D., destroying any semblance of dignity or self-respect they once had.  In addition to the psychological and emotional injuries they suffered, the Grand Jury testimony and documentary evidence amply demonstrates that Defendant physically abused both women, as well as C.R., causing serious bodily injury.

Based particularly on the account provided by C.R., Defendant has a long history of prostituting women.  He also has a long history of engaging in physical violence against women.  All three women who testified before the Grand Jury described being choked, hit or otherwise physically abused by Defendant when it suited him.  It comes as no surprise that as far back as 2002, at the age of 22, Defendant was convicted of Aggravated Battery for striking a man about the head with a firearm.  *See* DE # 110 (PSR) at para. 45-46.  Defendant's other prior criminal convictions underscore his lack of respect for the law.  *See id.* at paras. 37-55.

In short, Defendant is a violent sexual predator who poses a very real future risk of danger to society generally and to young women specifically.

14

## <u>CONCLUSION</u>

Based on the factors set forth in 18 U.S.C. § 3553(a) and the evidence discussed above, the government urges the Court to once again sentence Defendant to a term of incarceration of 120 months in prison.  Further, because he will not be required to register as a sex offender despite his commission of many violent sex offenses, as proven by the evidence submitted herewith, the government respectfully requests that the Court impose upon Defendant a lifetime term of supervised release.

Respectfully submitted,

DAVID CAPP
United States Attorney

By:    <u>/ S /  *Jill R. Koster*</u>
JILL R. KOSTER
Assistant United States Attorney
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

/s/  Jill R. Koster
JILL R. KOSTER
Assistant U.S. Attorney
U.S. Attorney's Office
5400 Federal Plaza, Suite 1500
Hammond, Indiana 46320
(219) 937-5500