UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MONTELL WILLIAMS,

    Plaintiff,

v.

LLOYD ARNOLD,

    Defendant.

Case No. 2:25-CV-108-GSL-APR

## OPINION AND ORDER

This matter is before the Court on Plaintiff Montell Williams' Emergency Motion for Stay Pending Appeal [DE 31], in which Plaintiff seeks a stay of the Court's Opinion and Order [DE 29] requiring Plaintiff's compliance with the sex offender registration requirements under the Sex Offender and Registration and Notification Act (SORNA). For the reasons below, the Court **CONFIRMS** the Opinion and Order entered on December 15, 2025 [DE 29], **DENIES** Plaintiff's Motion to Stay, and notifies Plaintiff that any further relief must come from the Seventh Circuit Court of Appeals.

## BACKGROUND

A brief synopsis of this case's facts are as follows.[1] In 2013, under Cause No. 2:12-cr-144, Plaintiff pled guilty to violating 18 U.S.C. § 2421, which involves transporting an individual in interstate commerce with intent that such individual engage in prostitution. Following two sentencings and an appeal to the Seventh Circuit, Plaintiff was ultimately given 120 months of imprisonment and a lifetime term of supervised release. A condition of his

---

[1] A full and detailed layout of both the factual and procedural background can be found in the Court's Opinion and Order, entered on December 15, 2025. [*See* DE 29 at 1–3].

supervised release required that he comply with the sex offender registration requirements under SORNA.

In 2022, Plaintiff moved to modify the conditions of his supervised release, specifically the condition requiring compliance with SORNA. As the district court noted in its order addressing Plaintiff's motion for modification [DE 14-6 at 3], Plaintiff's request was initially premised on the basis that SORNA was inapplicable to him, highlighting the "consensual sexual conduct" exception he would later invoke in the current matter. Plaintiff, however, clarified that he did not seek a clarification on SORNA's applicability and instead sought only to strike the compliance requirement from his supervised release [*Id.*]. The district court granted Plaintiff's motion and removed the compliance condition from his supervised release, leaving the question of SORNA's applicability unanswered given Plaintiff's withdrawal of that argument.

In 2025, Plaintiff initiated this action seeking a declaratory judgment that (1) SORNA does not apply to him, (2) he need not register as a sex offender, and (3) he should be removed from the Indiana Sex Offender Registry. [DE 4, ¶¶ 12, 17]. Plaintiff named Lloyd Arnold, in his official capacity as Commissioner of the Indiana Department of Corrections, as the defendant. After answering Plaintiff's Complaint, Defendant Arnold moved for judgment on the pleadings [DE 14], arguing that Plaintiff 's conviction under § 2421 was a qualifying "sex offense" as defined by 34 U.S.C. § 20911(5)(A)(iii) and that Plaintiff was required to register as a sex offender. Plaintiff countered that he was not convicted of a sex offense because his conviction fell within an exception under § 20911(5)(C) for "offense[s] involving consensual sexual conduct." The Court then engaged in an exercise of statutory interpretation regarding the term "sex offense" and, after finding Plaintiff's underlying conviction was a qualifying sex offense and that the underlying offense was not one "involving consensual sexual conduct" as necessary

to invoke the exception, the Court determined Defendant Arnold was entitled to judgment in his favor. [DE 29 at 15]. And because the Court held that SORNA—which requires registration, *see* 34 U.S.C. §§20913–20915—was applicable to Plaintiff as a sex offender, the Court further ordered that Plaintiff comply with SORNA's sex offender registration requirements. [*Id.*].

On January 5, 2026, Plaintiff filed both his Emergency Motion for Stay Pending Appeal [DE 31], and immediately thereafter his Notice of Appeal [DE 32], both of which challenge the Court's decision granting Defendant Lloyd Arnold's Motion for Judgment on the Pleadings [DE 14; DE 29].[2] Defendant Arnold did not file a response.

## LEGAL STANDARD

A stay pending appeal is a form of "extraordinary relief" for which the movant bears a "heavy burden." *Castañon-Nava v. U.S. Dep't of Homeland Security*, 161 F.4th 1048, 1055 (7th Cir. 2025) (quoting *Plaquemines Parish v. Chevron USA, Inc.*, 84 F.4th 362, 373 (5th Cir. 2023)). When determining whether to grant a motion for stay pending appeal, the Court considers the following factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)). "The first two factors 'are the most critical.'" *Id.* (quoting *Holder*, 556 U.S. at 434).

## DISCUSSION

**I.   Likelihood of Success on the Merits**

---

[2] Plaintiff also filed an emergency motion to stay with the Seventh Circuit on January 9, 2026, raising substantively the same arguments as in his motion before this Court. The Seventh Circuit denied that motion without prejudice to renewal on January 14, 2026, pending this Court's decision.

3

In addressing the first of the *Holder* factors, Plaintiff centers his argument on the basis that the Court lacked the jurisdictional capacity to enter its Opinion and Order [DE 29]. First, Plaintiff asserts there was no live controversy at play [DE 31 at 3]. Second, Plaintiff argues this Court lacked jurisdiction under the Eleventh Amendment and *Ex Parte Young*, 209 U.S. 123 (1908) [*Id.*]. Finally, Plaintiff contends the Court improperly exceeded its civil authority by imposing criminal law obligations and contradicting a prior ruling [*Id.* at 4]. The Court will touch on each argument.

### A. Article III Justiciability

To begin with Plaintiff's first argument, Plaintiff is essentially raising a justiciability challenge under Article III of the United States Constitution. "Article III restricts the judicial power to actual 'Cases' and 'Controversies,' a limitation understood to confine the federal judiciary to 'the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threated injury to persons caused by private or official violation of the law.'" *Ezell v. City of Chi.*, 651 F.3d 684, 694–95 (7th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009)); *see also* U.S. CONST. art III, § 2.

In this specific scenario, Plaintiff initiated a declaratory judgment action. The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting 28 U.S.C. § 2201(a) (alteration in original)). The United States Supreme Court upheld the constitutionality of the Declaratory Judgment Act in *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937), explaining that the "case of actual controversy" requirement under the Act refers to the type of "Cases" and "Controversies" that

4

are justiciable under Article III. *See MedImmune*, 549 U.S. at 127 (citing *id.* at 240). Further, the Court explained in *Aetna* and its progeny that for a declaratory action to meet this threshold "controversy" requirement, the underlying dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and moreover, be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quoting *Aetna*, 300 U.S. at 240–41); *see also Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941) ("Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

Here, Plaintiff's initiation of this action was grounded on seeking a declaration that he was not a sex offender, should not have to register as a sex offender in Indiana, and should be removed from Indiana's Sex Offender Registry by the Department of Corrections—all despite his conviction for a qualifying sex offense under SORNA requiring his registration as a sex offender in Indiana. Plaintiff contends that despite seeking this declaration, a live controversy did not exist because there was no enforcement action against him, and furthermore, any communications from state officials only confirmed the matter was "unresolved" and "pending litigation." [DE 31 at 3]. On this basis, Plaintiff also asserts that any risk was "speculative and contingent on the district court's own ruling," thereby rendering any alleged controversy as merely hypothetical and court created. [*Id.*].

Plaintiff, however, was required to register as a sex offender following his release from custody in 2020, and although a mandatory condition requiring as much was removed from the

5

terms of his supervised release, the question of whether he must nonetheless remain compliant with SORNA persisted. It was this very point which prompted Plaintiff—*upon his own terms and intent*—to seek out a declaration to the contrary. Plaintiff recognized that despite the removal of the registration condition from his supervised release, compliance with SORNA, or the lack thereof, could prompt the threat of government action should he fail to register as SORNA requires.[3]

The Supreme Court in *MedImmune* highlighted that, "where threated action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat," further explaining that "[t]he Plaintiff's own action (or inaction) in failing to violate the law eliminates the imminent threat of prosecution, but nonetheless does not eliminate Article III jurisdiction." *MedImmune*, 549 U.S. at 128–29. Plaintiff created a live controversy when he sought a declaration of his rights so as to avoid any potential threat of enforcement for noncompliance. Based on the reasoning provided for in *MedImmune*, it is unclear why Plaintiff's situation would serve as an exception. The Court is therefore unconvinced that it lacked justiciability on this basis.

### B. Eleventh Amendment Sovereign Immunity

---

[3] Plaintiff further asserts that the voluntary cessation doctrine does not preserve the justiciability of this matter. Plaintiff, however, appears to be reading the voluntary cessation doctrine in reverse. Under this doctrine, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). A conflict will not be mooted by a party's voluntary cessation unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quoting *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968)). The burden of proving that the challenged conduct cannot reasonably be expected to recur lies with the party asserting mootness. *See N. Tex. Equal Access Fund v. Thomas More Soc'y*, 728 F. Supp. 3d 887, 899 (N.D. Ill. 2024) (citing *id.*). Here, Plaintiff has not only failed to assert any proof of cessation concerning the enforcement of his registration requirements, but it should be noted once more that Plaintiff himself initiated this declaratory judgment action specifically *because of* the continuing possibility of enforcement regarding his registration as a sex offender in Indiana.

Moving to Plaintiff's second argument, he contends the Court lacked subject matter jurisdiction under the Eleventh Amendment because his alleged injury is not redressable against Defendant Arnold. Plaintiff further asserts that the *Ex Parte Young* exception does not apply where a state official has no enforcement connection to the challenged federal statute, arguing the State of Indiana is the real, substantial party in interest. [*Id.*].

The Eleventh Amendment provides, "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." *Council 31 of the Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Quinn*, 680 F.3d 875, 881 (7th Cir. 2012) (quoting U.S. CONST. amend. XI). Although not explicitly stated in its text, courts have construed the Eleventh Amendment broadly to confer "the sovereign immunity that the States possess before entering the Union." *See id.* (quoting *College Sav. Bank v. Fl. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 669 (1999)). Thus, when properly raised, the Eleventh Amendment bars "actions in federal court against a state, state agencies, or state officials acting in their official capacities. *Id.* (quoting *Ind. Prot. & Advocacy Servs. v. Ind. Fam. & Soc. Servs. Admin.*, 603 F.3d 365, 370 (7th Cir. 2010)). But even where it is properly raised, the Eleventh Amendment does not confer absolute immunity from suit. *See id.* at 882. Where, as relevant here, a state official is sued in their official capacity for prospective injunctive or declaratory relief, a suit may proceed under the exception established in *Ex Parte Young*, 209 U.S. 123. Here, Plaintiff seeks just that: injunctive or prospective relief against Defendant

Arnold in his official capacity as Commissioner of the Indiana Department of Corrections. Thus, it is unclear how the Court lacked jurisdiction on this basis.[4]

### C. Exceeding Civil Authority

Finally, Plaintiff argues that the Court exceeded its civil jurisdiction by imposing an affirmative federal registration obligation enforceable by criminal penalties. [DE 31 at 4]. Plaintiff further argues that the Court's Opinion and Order conflicts with the prior ruling in his underlying criminal matter modifying the conditions of his supervised release. There are two issues with Plaintiff's argument, however. First, as Plaintiff acknowledges, this is a civil declaratory judgment proceeding in which Plaintiff asked the Court to determine his rights with regard to SORNA. The Court did specifically as Plaintiff requested. Second, and relatedly, the subject of this declaratory judgment action was whether SORNA applied to Plaintiff, a question that was explicitly left unanswered in the underlying criminal matter. Third, and finally, the Court did not alter the terms of Plaintiff's supervised release—a task best left to the request of Probation or the Government. Instead, the Court merely interpreted whether SORNA was applicable—the question specifically posited to the Court by Plaintiff. And because Plaintiff was presumably required to comply with SORNA and register as a sex offender even before the Court determined as much, it is unclear how the Court stepped outside the box of its civil jurisdiction.

---

[4] Plaintiff further attempts to assert that his alleged injury was not redressable by an order against Defendant Arnold, arguing that Defendant Arnold lacks the relevant enforcement authority over his sex offender registration. [DE 31 at 3]. But this argument was never raised at any prior point in the proceedings. And notwithstanding this waiver, it was Defendant—by counsel, and not the Court, who chose to sue Defendant Arnold. Should Plaintiff have wanted the Court to entertain this argument, the argument should have been timely raised on the merits.

Accordingly, Plaintiff's jurisdictional arguments fail. And because no other arguments supporting a likelihood of success on the merits were presented to the Court, this factor weighs against granting a stay.

## II. Irreparable Harm

Proceeding to the second *Holder* factor, Plaintiff argues that "[a]bsent a stay, [Plaintiff] faces immediate and irreparable harm" because the Court's Order and Opinion imposes "immediate exposure to criminal liability, arrest, prosecution, and incarceration[.]" [DE 31 at 4]. But this argument is unpersuasive. Plaintiff was already required to register as a sex offender following his release from custody in 2020, and was further aware that he may still be required to register under SORNA even with the modification to his supervised release, hence the initiation of this action. As explained above, no prior ruling in the underlying criminal matter deemed Plaintiff exempt from SORNA, and although Plaintiff had the opportunity to request such a declaration, Plaintiff explicitly narrowed his request for relief to a modification of the terms in his supervised release. Therefore, with all of this in mind, the Court has not changed the status quo. Plaintiff was, and still is, required to comply with whatever registration requirements are outlined under SORNA. This factor, too, weighs against the grant of a stay.

## III. Balance of Equities and Public Interest

Plaintiff's remaining arguments on the third and fourth *Holder* factors essentially reiterate the points previously addressed in the prior two factors; most pertinently, the Court's jurisdiction and the threat of criminal enforcement. Plaintiff does not touch on the impact to Defendant should the stay be granted. Furthermore, Plaintiff's argument that the public interest is served by "preserv[ing] orderly review and prevent[ing] the premature enforcement of a potentially void judgment" is overly broad and appears to undermine any decision that could

potentially be rendered against the movant's favor. Even if this were not the case, these factors seem neutral at best and otherwise do not trump the previous two factors, which are "the most critical" for purposes of the stay analysis. *See Castañon-Nava*, 161 F.4th at 1055 (quoting *Holder*, 556 U.S. at 426).

## CONCLUSION

For the reasons explained above, Plaintiff's Emergency Motion to Stay the Court's Order Pending Appeal [DE 31] is **DENIED**. Because Plaintiff has initiated his appeal in this matter, any further relief must come from the Seventh Circuit Court of Appeals.

SO ORDERED.

ENTERED: January 30, 2026

/s/ GRETCHEN S. LUND
Judge
United States District Court